UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

LUCY A. CHANDLER,                          )
               Plaintiff,              )
                             )
       vs.                                  )            1:08-cv-0755-LJM-JMS
                             )
MICHAEL J. ASTRUE, Commissioner            )
of the Social Security Administration,     )
              Defendant.              )

**ENTRY ON JUDICIAL REVIEW**

Plaintiff, Lucy A. Chandler ("Chandler"), requests judicial review of a final decision

of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration (the

"Commissioner"), in which the Commissioner concluded that Chandler was not disabled

and thus not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social

Security Act, 42 U.S.C. §§ 416(I), 423(d).  The Court rules as follows.

# I. BACKGROUND

## A.  PROCEDURAL HISTORY

Born May 26, 1947, Chandler was fifty-nine years old at the time of the

Administrative Law Judge's, Peter C. Americanos (the "ALJ"), decision on October 26,

2006.  R. at 20, 41, 383.  Chandler claimed she had been disabled since September 20,

2004, approximately nine months after she was laid off from her position as a jewelry

inspector.  R. at 57, 120.  Chandler completed her education through the twelfth grade and

worked as a jewelry staging clerk, jewelry repair editor, and jewelry inspector from 1987 to

2004.  R. at 104-09, 116, 120-21, 125.  On October 14, 2004, Chandler, who was insured

for DIB, applied for a period of disability and DIB[1] pursuant to §§ 416(I) and 423(a). R. at 41, 57.  Chandler claimed that the arthritis pain in her knees, hands, shoulders, and elbows prevented her from bending, walking for long periods, and gripping objects tightly. R. at 103, 119.

On February 9, 2005, Chandler received notice that her claim had been denied because a disability could not be established under Social Security Administration rules. R. at 50.  On February 14, 2005, Chandler appealed the decision by submitting a Request for Reconsideration.  R. at 49, 52.  On April 1, 2005, Chandler was notified that the original decision by the Social Security Administration on February 9, 2005, would stand and her appeal was denied.  R. at 46-48.

On April 11, 2005, Chandler requested a hearing before an administrative law judge. R. at 38-45.  Chandler was represented by counsel at the January 6, 2006, ALJ hearing. R. at 381-403.  The ALJ entered a decision on October 26, 2006, that Chandler was not disabled under §§ 416(I) and 423(d) of the Social Security Act.  R. at 20-28.  On December 21, 2006, Chandler filed an appeal with the Appeals Council.  R. at 17.  On October 12, 2007, the Appeals Council denied Chandler's request for review.  R. at 9.  On May 9, 2008, the ALJ's decision became the final decision of the Commissioner when the Appeals Council again denied review.  R. at 4.

---

[1] Chandler's DIB application is not included in the administrative record.

2

## B.  MEDICAL HISTORY

In 2002, orthopedist Edward Hellman, M.D. ("Dr. Hellman") performed a partial lateral meniscectomy surgery on Chandler's right knee.  R. at 209.  A year later, in May 2003, Dr. Hellman observed that X-rays revealed the lateral compartment of Chandler's knee was nearly bone on bone, which had led to significant osteoarthritis in that knee.  R. at 209.  Over the next several months, Chandler's pain greatly improved through the use of medication designed to relieve the pain, stiffness, and inflammation caused by her arthritis.  R. at 207, 209.  On October 9, 2003, Dr. Hellman described the pain in Chandler's knee as controlled and her walking ability as unlimited.  R. at 206.  However, Dr. Hellman also indicated that Chandler's knee had a degenerative condition. R. at 206, 209.

Chandler's pain began to increase six months after her surgery.  R. at 261.  In July 2004, Chandler began to experience pain in her right hip after she fell down. R. at 256.  Chandler made an appointment with Dr. Alison Wright ("Dr. Wright"), who became Chandler's primary care physician.  R. at 256, 312.  Dr. Wright noted that Chandler had a history of lower back pain and hypertension.  R. at 256.  Initially, Dr. Wright attributed Chandler's hip pain to the fall.  R. at 256.  In August 2004, Dr. Wright, attributing the hip pain to osteoarthritis, revised her initial diagnosis and placed Chandler on pain medication. R. at 256.  In September 2004, Chandler began experiencing right shoulder pain.  R. at 257.  In addition, Chandler's knee pain grew increasingly worse from June to late-September 2004.  R. at 261.  During this time, Chandler also experienced swelling in her hands and elbows, both areas where she previously had carpal tunnel surgeries.  R. at 214, 251, 257.  On September 27, 2004, Chandler saw Dr. Jarvis Earl ("Dr. Earl") regarding her

3

knee pain, but declined a cortisone shot.

By October 2004, Chandler was taking ten medications to ease arthritic pain, anxiety, inflammation, blood pressure, muscle tension, and to facilitate her sleeping. R. at 123-4.  On October 25, 2004, Chandler saw Dr. Earl again and received a cortisone shot in hopes of diminishing her knee pain.  R. at 260.  Dr. Earl expressed concern that "[Chandler] may be out of options."  R. at 260.  On November 3, 2004, Chandler underwent an EMG and nerve conduction study to address the pain in her right upper extremity. R. at 251.  However, the examination did not indicate anything unusual.  R. at 250-51.

Between December 28, 2004, and February 8, 2005, Chandler was examined and had her files reviewed by two physicians and two psychologists at the request of the state agency.  R. at 137-44, 148-70.  On Dr. Earl's recommendation, Chandler began using a cane.  R. at 148, 153, 260, 265.  On December 28, 2004, a psychologist, Dr. Nancy Ingwell ("Dr. Ingwell"), determined that Chandler had minimal psychological symptoms but diagnosed a mood disorder due to a medical condition.  R. at 152-56.  On December 28, Chandler was also examined by Dr. Elpidio Feliciano ("Dr. Feliciano").  R. at 149.  Dr. Feliciano stated that Chandler's walk was slow and antalgic but steadier and faster with the use of her cane.  R. at 149.  Dr. Feliciano further stated that Chandler had normal bilateral fine finger manipulation.  R. at 150.

On February 8, 2005, state agency sources released additional opinions. R. at 137-44, 157-70.  Dr. F. Kladder ("Dr. Kladder"), a psychologist, noted that Chandler had a mood disorder secondary to her medical condition but not to the degree of the "B" criteria limitations.  R. at 157-70.  Dr. W. Bastnagel ("Dr. Bastnagel"), a physician, stated that Chandler could occasionally lift twenty pounds, frequently lift ten pounds, stand

4

or walk for at least two hours in an eight-hour workday, and sit about six hours in an eight-hour workday. R. at 138. Dr. Bastnagel further noted that Chandler had handling limitations as well as postural limitations, such as climbing stairs, kneeling, and crouching. R. at 139, 140.

In February and March 2005, Chandler had follow-up appointments with Drs. Wright and Earl. R. at 132, 308, 324. Dr. Wright noted that Chandler refused to have knee replacement surgery and was "not being controlled with her pain." R. at 132. Additionally, Chandler received another injection into her right knee from Dr. Earl. R. at 324.

On May 16, 2005, with Dr. Wright's office closed, Chandler went to an immediate care center complaining of severe pain in her elbows. R. at 265, 290. Chandler was given a splint for her elbows but was still in pain two days later when she saw Dr. Wright. R. at 305. Dr. Wright injected both of her elbows to relieve the pain. R. at 305. She recommended that Chandler continue to wear the elbow brace and noted a specialist could be required if the pain was not reduced. R. at 305.

In July 2005, Dr. Wright completed an Arthritis Residual Functional Capacity Questionnaire. R. at 312-317. Dr. Wright indicated, among other things, that Chandler had a poor prognosis and suffered from severe bilateral knee pain, reduced range of motion in the elbows and knees, joint instability, and muscle weakness. R. at 312. Furthermore, these impairments would last indefinitely. R. at 314. Dr. Wright indicated that Chandler suffered from depression due to the pain and that emotional factors contributed to the severity of Chandler's symptoms and functional limitations. R. at 313. However, Dr. Wright did not answer the question requesting her to describe any psychological limitations that might affect Chandler's ability to work at a regular job. R. at 317.

5

As to Chandler's likely work performance, Dr. Wright noted that Chandler might both be "incapable of 'low stress jobs'" and "capable of low stress jobs."  R. at 313.  Dr. Wright circled that Chandler could only sit for fifteen to twenty minutes before getting up, could stand up to five minutes, and sit, stand, and walk for less than two hour increments in an eight-hour work day with normal breaks.  R. at 314, 315.  Also, Dr. Wright noted that Chandler could occasionally lift and carry ten pounds or less, rarely lift and carry twenty pounds, and never lift and carry fifty pounds.  R. at 316.  Finally, Chandler would be absent from her job more than four days per month due to her impairments or treatment. R. at 317.

In July and August of 2005, Chandler saw Dr. Earl to receive additional injections in her right knee.  R. at 300, 324.  Dr. Earl also stated that he suspected the pain in Chandler's left shoulder was due to a chronic rotator cuff tear.  R. at 324.  However, Chandler specifically requested that pain medication be the only treatment.  R. at 324. Also, Chandler saw Dr. Wright, who indicated that the only option for the arthritis in her knees would be a knee replacement as Chandler's "arthritis was progressively worsening" and "decreasing her mobility as well as her spirits."  R. at 325.

## C.  ALJ HEARING

On January 6, 2006, the ALJ heard Chandler's case.  R. at 381.  At the hearing, Chandler stated that she realized she was disabled after being unable to find new work. R. at 382, 388.  Her arthritis, inability to lift heavy objects, surgery on her hands, and the need to use a cane made it difficult for her to perform previously accomplishable tasks.  R. at 388.  Chandler stated that she had arthritis in each of her hands, her shoulder, each of

6

her elbows, and her right knee.  R. at 388-89.  Furthermore, Chandler stated that her medications helped with the arthritis pain and the anxiety and nervousness caused by the pain, but that these medications' side-effects caused her to feel "drowsy and dizzy" and unable to focus or concentrate.  R. at 390, 395-96.

The ALJ asked Chandler how much pain she was in on a scale of one to ten, one being barely noticeable and ten being so severe that a person would be screaming in pain and would have to be taken to the hospital emergency room.  R. at 391.  Chandler stated her right knee and left hand were a ten out of ten, her shoulder was an eight, and overall, she was at a ten out of ten.  R. at 391-92.  Finally, Chandler stated that she was unable to do any household chores, such as cooking and laundry.  R. at 395.

A Vocational Expert ("VE"), Constance Brown, also testified at the hearing.  The VE stated that there were three jobs that closely matched Chandler's previous work:  a general inspector of small parts, a receiving checker, and a shipping checker.  R. at 398.  The ALJ asked the VE whether "an individual of [Chandler's] age, education, and work experience, who can do work at the light level, full range" could do Chandler's prior work.  R. at 399. The VE stated that the person described could do that type of work and that there were 164,000 jobs for a full-range of light, unskilled work in Indiana.  R. at 399.  The VE also stated that the 164,000 jobs at the light, full range required lifting more than twenty pounds on a regular basis, and that an employer would only tolerate more than one absence per month.  R. at 401.  The ALJ also asked the VE whether Chandler, if as fully restricted and in as much pain as she claimed, could "do either of her prior jobs."  R. at 400.  The VE stated Chandler could not, due to her impaired lifting ability and the side-effects of her

7

medication.  R. at 400.  When asked about other jobs under those circumstances, the VE also stated "no, for the same reasons."  R. at 400.

## II. DISABILITY AND STANDARD OF REVIEW

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.  "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).  In determining whether a claimant is disabled, the ALJ applies a five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

1. If the claimant is employed in substantial gainful activity, the claimant is not disabled.

2. If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

3. If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

4. If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

5. If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

The burden of proof is on the claimant for the first four steps, then it shifts to the Commissioner at the fifth step.  *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

8

The Social Security Act, specifically 42 U.S.C. §405(g), provides for judicial review of the Commissioner's denial of benefits.  When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become findings of the Commissioner.  *See, e.g.*, *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).  The Court will sustain the ALJ's findings if they are supported by substantial evidence.  42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999).  In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ.  *Id.*  While a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## III.  DISCUSSION

### A.  THE ALJ'S FINDINGS

The ALJ found that Chandler satisfied step-one of the disability analysis because Chandler met the insured status requirements of the Social Security Act through December 31, 2009, and had not been "engaged in substantial gainful activity since September 20, 2004, the alleged onset date."  R. at 25.  At step-two, the ALJ found Chandler had arthritis, a severe impairment.  R. at 25.

However, at step-three, the ALJ stated that Chandler "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  R. at 25.  The ALJ found that Chandler's "knee arthritis limited her ability to stand and walk, but not to the extent that she would be prevented from occasional walking

9

or standing in an [eight] hour day." R. at 25. Furthermore, the ALJ found that there was "no objective medical evidence to support" Chandler's claims that her shoulder and both of her elbows had caused her "significant limitations in function for a period of more than [twelve] months." R. at 25, 26.

Before addressing step-four, the ALJ determined that Chandler had the "residual functional capacity [("RFC")] to lift and carry up to [twenty] pounds frequently but otherwise perform sedentary work." R. at 26. The ALJ described the sedentary work as sitting for six hours, standing for two hours, and bending occasionally during an eight-hour workday. R. at 26.

Based on Chandler's testimony, the ALJ determined that "it is obvious she is exaggerating her complaints of pain" and that "her allegations of disability lack credibility." R. at 27. The ALJ concluded that Dr. Wright's opinions in the Arthritis Residual Functional Capacity Questionnaire were "not well reasoned" because they did not "explain why [Chandler] would be limited in her ability to work." R. at 27. Furthermore, the ALJ assigned less than controlling weight to Dr. Wright because she was a family physician, not an orthopaedic specialist, and did not back up her claims with objective medical evidence or treatment records. R. at 27. The ALJ found the state agency medical and psychological sources "consistent with the objective evidence in the record, and consistent with the treatment records." R. at 27. Therefore, the ALJ gave the state agency sources' opinions controlling weight. R. at 27.

At step-four, the ALJ determined that Chandler was "capable of performing past relevant work as jewelry inspector, jewelry repair editor, and jewelry staging clerk." R. at 27. The ALJ stated:

> The claimant reports that when she performed these jobs she sat for most of the [eight] hours shift, but had to occasionally stand and walk short distances and lift and carry up to [twenty] pounds.  The vocational expert testified that because the claimant retains the ability to sit up for [six] hours per day, stand or walk up to [two] hours per day and lift and carry up to [twenty] pounds frequently she is able to return to her past relevant work.

R. at 27, 28.  Therefore, the ALJ concluded that the activities required by those jobs were not precluded by Chandler's residual functional capacity.  R. at 27.

For these reasons, the ALJ found that Chandler was not disabled, as defined in the Social Security Act, from September 20, 2004, through the date of his decision.  R. at 28.

## B.  CHANDLER'S ARGUMENTS ON APPEAL

Chandler makes several arguments on appeal regarding the ALJ's determination.  Chandler argues that the ALJ erred in his analysis at steps four and five.  In addition, Chandler asserts that the ALJ erred in his analysis of Chandler's alleged mental impairments and by giving controlling weight to the state agency opinions.  Finally, Chandler argues that the ALJ failed to properly consider her obesity.  The Court considers Chandler's arguments in turn.

### 1.  The ALJ's Step-Four Decision

Chandler argues that the ALJ's step-four decision is not supported by substantial evidence because it is based on an incorrect interpretation of the VE's testimony.  At step-four, the ALJ stated:

11

> The vocational expert testified that because the claimant retains the ability to sit for up to [six] hours per day, stand or walk up to [two] hours per day and lift and carry up to [twenty] pounds frequently she is able to return to her past relevant work.

R. at 27.  Chandler asserts that "[t]he ALJ never asked the VE to identify jobs consistent with his residual functional capacity assessment for the lifting and/or carrying of 'light' work and the standing and/or walking of 'sedentary' work."  Pl.'s Br. at 7.  Therefore, because the ALJ only asked the VE to opine on jobs performed at a full range, rather than a limited range, the ALJ's step-four decision was not based on an accurate opinion from the VE.

> At the hearing, before the ALJ, the following exchange took place:

> ALJ:  [A]ssume an individual of Claimant's age, education, and work experience who can do work at the light level, full range.  I presume that such a person can do the prior light work of this claimaint?

> VE:  Yes.

R. at 399.  A "light work level, full range" is defined under SSR 83-10.  "Light work" is defined as "lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds," and "a job is in this category when it requires a good deal of walking or standing - the primary difference between sedentary and most light jobs."  SSR 83-10.  "Full range" is defined as "all or substantially all occupations existing at an exertional level.  *Id.*  Contrarily, the ALJ determined in his RFC decision that Chandler only had the RFC "to lift and carry up to [twenty] pounds frequently but otherwise perform sedentary work."  R. at 26.

> Although not mandatory, an ALJ may enlist a VE to "offer expert opinion in response to a hypothetical question" about whether "physical and mental limitations imposed by the claimaint's medical impairment(s) can meet the demands of the claimaint's previous work."

20 C.F.R. § 416.960(b).  A hypothetical question is proper when it reflects the "impairments to the extent the ALJ found them supported by evidence in the record." *Ehrhart v. Secretary*, 969 F.2d 534, 540 (7th Cir. 1992).  Furthermore, "[h]ypothetical questions posed to [VE's] ordinarily must include *all* limitations supported by medical evidence in the record." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (emphasis in original).  When posing his hypothetical to the VE, the ALJ was required to include all of Chandler's limitations "to ensure that the vocational expert [did] not refer to jobs that [Chandler] cannot work."  *Id.* However, the ALJ never asked the VE a hypothetical premised on his RFC determination. Contrary to the ALJ's decision, the VE never testified that Chandler could perform past relevant work based on an ability to perform a "limited range" of work.  *Compare* R. at 399, *with* R. at 27-28.  Instead, the VE opined on Chandler's ability to perform past relevant work based on "light level, full range" factors that were more extensive than Chandler's RFC. R. at 26.

In some circumstances, an incomplete hypothetical question is cured "by a showing that prior to testifying[,] the vocational expert reviewed the claimant's record containing the omitted information."  *Ragsdale v. Shalala*, 53 F.3d 816, 820 (7th Cir. 1995).  Here, the VE may have known that Chandler had further limitations, as she stated that she had reviewed the written record and listened to Chandler's testimony.  R. at 398.  Nevertheless, the hypothetical questions posed to the VE in this case are similar to the hypothetical questions posed in *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004).  In *Young*, the ALJ limited the hypothetical questions to specific limitations that the VE was to follow which, "by the nature of the questioning . . . prohibited [the VE] from considering physical, psychological, or cognitive limitations that he may have absorbed either through reviewing the evidence

in the record or by listening to the hearing testimony." *Id.* The hypothetical was "fundamentally flawed" and required remand because it "made short shrift" of the plaintiff's impairments. *Id.* at 1004-05. Similarly, in this case, the ALJ limited the hypothetical to someone of Chandler's age, education, and work experience that could work at the light level, full range. R. at 399. The structure of the hypothetical did not allow the VE to consider limitations in the written record or Chandler's testimony.

The Commissioner argues that, notwithstanding the ALJ's misinterpretation of the VE's testimony, the ALJ's step-four decision is supported by substantial evidence because it is based on both the VE testimony and Chandler's work history report. Def.'s Br. at 5. Chandler's work history shows that her previous two jobs as a "repair editor" and an "inspector" did not require her to walk and stand for more than two hours in a ten-hour workday. R. at 107-09. The vast majority of her time, eight hours per day, was spent sitting. Therefore, the Commissioner asserts that the work history report provides independent support for the ALJ's step-four decision. In response, Chandler asserts that her work history report shows that her past relevant jobs required her to lift twenty-five pounds frequently. Pl.'s Br. at 9; R. at 104-11. Therefore, because the ALJ determined Chandler could only lift up to twenty pounds frequently, the ALJ's step-four decision regarding past relevant work is not supported by substantial evidence.[2] R. at 26.

In the work history report, Chandler checked boxes indicating that her past jobs required lifting twenty-five pounds frequently, but that twenty pounds was the heaviest object she ever lifted. R. at 105-09. Chandler argues that "the ALJ did not dispute the

---

[2] Although Chandler stated that the ALJ determined her RFC restriction to "light work" and lifting ten pounds frequently, Chandler corrected this error in her reply brief.

correctness or veracity of any of Chandler's statements about the demands" of past relevant jobs, including the issue of lifting of twenty-five pounds frequently. Pl.'s Br. at 10. Nevertheless, the ALJ correctly refused to accept the impossible proposition that Chandler frequently lifted a greater amount of weight (twenty-five pounds) than the heaviest amount she was ever required to lift (twenty pounds). The ALJ concluded that Chandler's prior work required her to "lift and carry up to [twenty] pounds." R. at 27. Accordingly, the ALJ did not err in determining that Chandler was capable of actually performing the lifting function of her prior jobs, based on her current ability to lift up to twenty pounds frequently.

Chandler's second argument is that the ALJ erred by finding she was capable of past relevant work that required her to sit for eight hours per workday, which surpassed the ALJ's supposed limit on hours spent sitting. Pl.'s Br. at 9-11. The ALJ determined that Chandler was capable of sedentary work, such as sitting for six hours, standing and walking for two hours, and bending occasionally in an eight-hour workday. R. at 26. Sedentary work involves jobs where "walking and standing are required occasionally and other sedentary criteria are met." SSR 83-10. The term "'occasionally' means occurring from very little up to one-third of the time." *Id.* While the Seventh Circuit is "not invariably bound by an agency's policy statements," it "generally defer[s] to an agency's interpretations of the legal regime it is charged with administering." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

Chandler argues that her two past jobs exceeded the number of hours the ALJ found Chandler could sit because each job required sitting for eight hours in a ten-hour day. Pl.'s Br. at 9. However, the ALJ's wording simply mirrored the Social Security Ruling's example of the daily limitations of sitting and standing during sedentary work. *See* SSR 83-10

15

(stating periods of standing or walking during eight-hour day).  Furthermore, the ruling's wording suggests that these are not ceilings for the number of hours per day, but are recommended ratios that sedentary jobs should generally attain during an eight-hour workday.  *Id.*  Specifically, two hours would equal one-fourth of an employee's time in an eight-hour day and fit within SSR 83-10's definition of "occasional" walking and standing.  Similarly, two hours in a ten-hour day would equal one-fifth of an employee's time and also fit into the definition of "occasional."  The ALJ was not addressing the maximum number of hours Chandler could sit per day, but was merely restating the eight-hour day recommendation contained in SSR 83-10.

Finally, Chandler argues that substantial evidence does not support the ALJ's analysis and finding that Chandler could perform past relevant work on a regular and continuing basis.  A "regular and continuing basis" is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8p.  The Commissioner argues that SSR 96-8p offers support for the ALJ's finding that Chandler had the ability to perform past relevant work at step-four.  Def.'s Br. at 7.  SSR 96-8p states that "[o]rdinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  In footnote two, the ruling states that "the ability to work [eight] hours a day for [five] days a week is not always required when evaluating an individual's ability to do past relevant work at step [four]."  *Id.*  As an example, the footnote also states that an individual who retains the RFC to perform part-time work is not found disabled.  *Id.*  Therefore, the Commissioner argues that Chandler retained the ability to perform her past relevant work because SSR 96-8p permits

16

work to be longer than an eight-hour day and Chandler's past relevant work still consisted of "primarily sitting" during a ten-hour day.

Contrary to the Commissioner's argument, Chandler's RFC does not indicate that Chandler's past relevant work is equivalent to eight hours a day, for five days a week, because the RFC is the most Chandler can do despite her limitations.   20 C.F.R. § 404.1545(a)(1); SSR 96-8p.  Presumably, a part-time job would not be as taxing as a full-time position and, therefore, the SSR 96-8p example is not relevant here.  In his step-four analysis, the ALJ inaccurately stated that Chandler had worked eight-hour shifts.  R. at 27. The Court cannot find any mention in Chandler's work history where she stated she worked less than ten hours per day.  R. at 104-11, 116-21.  Therefore, it is unclear whether the ALJ considered eight hours per day, six days per week as the equivalent to working ten hours per day, six days per week when the ALJ concluded that Chandler was capable of past relevant work on a regular and continuing basis.  The Court must be able to "track the ALJ's reasoning and be assured that the ALJ considered the important evidence."  *Diaz*, 55 F.3d at 308.   Accordingly, substantial evidence does not support the ALJ's step-four determination without a clear indication that the ALJ accurately viewed Chandler's RFC as the equivalent to her previous work schedule of working ten hours per day.

Therefore, the Court concludes that neither the VE's testimony, Chandler's work history report, or objective medical evidence in the record supports the ALJ's step-four decision.[3]

---

[3] Additionally, the Court concludes, and the parties agree, that the ALJ initially erred in determining Chandler had three past relevant jobs.  Chandler had not worked as a jewelry staging clerk in the past fifteen years, and therefore, only had two past relevant jobs.  Moreover, the Commissioner and the ALJ did not address Chandler's

### 2.  **Step-Five Decision**

Next, Chandler argues that the Court should find that she is clearly disabled at step-five.  However, "[a]n award of benefits is appropriate only if all factual issues have been resolved and the 'record can yield but one supportable conclusion.'"  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005) (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).  Here, the record is insufficient for the Court to remand for an award of disability benefits.  It is not clear to the Court that Chandler will be able to overcome her burden and succeed at step-four in the five-step determination.  Therefore, the Court does not opine on whether Chandler is clearly disabled at step-five.

### 3.  **Evaluating Chandler's Mental Condition**

Chandler also challenges the ALJ's assessment of her mental condition because the ALJ did not follow the "special technique."  Pl.'s Br. at 13-14.  The ALJ should use the "special technique . . . to evaluate mental impairments at steps two and three of the five-step evaluation."  *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008) (citing SSR 96-8p).  The ALJ evaluates the claimant's "pertinent symptoms, signs and laboratory findings to determine whether [a] medically determinable mental impairment exists."  20 C.F.R. § 404.1520a(b)(1).  If the ALJ determines a "medically determinable mental

---

ability to "generally" perform the jobs the VE stated were equivalent to Chandler's past relevant work.  The two jobs, "general inspector" and "receiving checker," both require an exertion level above the ALJ's RFC.  Therefore, on remand, the ALJ should reexamine his RFC and determine whether Chandler can generally perform the job of a "general inspector" or "receiving checker."

impairment exists," he must then "document that finding and rate the degree of functional limitation in four broad areas" that make up B-criteria: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." *Craft*, 539 F.3d at 674 (citing 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A § 12.00(C)).  These findings are used to determine whether a claimant's mental impairments are severe, meet or equal a listing, or require an RFC.  *Id.*

Dr. Kladder marked the "Impairment Not Severe" box on Chandler's Psychiatric Review Technique Form, indicating Chandler had a medically determinable impairment. R. at 157.  By giving Dr. Kladder's opinion controlling weight, the ALJ adopted Dr. Kladder's opinion that Chandler had a medically determinable impairment.  As stated above, if a medically determinable mental impairment exists, the ALJ must "document that finding and rate the degree of functional limitation in four broad areas" that make up B-criteria.  *Craft*, 539 F.3d at 674.  (citing 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A § 12.00(C)).

However, the ALJ's reasoning and explanation fails to give any indication that he considered the factors listed in the "special technique."  The ALJ merely stated that "[a] review of the record indicates" Chandler's mental disorders are controlled by medication. R. at 27.  The ALJ is required to use the special technique to determine whether a medically determinable mental impairment exists and specify the evidence that indicates an impairment.  20 C.F.R. § 404.1520a(b)(1).  Instead, the ALJ stated that the record did not contain evidence that the depression and anxiety were severe enough to keep Chandler from working.  R. at 27.  This, however, is contrary to the purpose of the "special technique," which uses the B-criteria to specifically address the severity of a claimant's

19

impairment.  20 C.F.R. § 404.1520a.  The Court cannot review whether the benefits denial was supported by substantial evidence when the ALJ failed to properly apply the B-criteria.

### 4.  ALJ Decision Regarding Weight of Medical Opinions

Chandler further argues that substantial evidence does not support the ALJ's second and third step determinations, RFC assessment, or adverse credibility finding, because "[t]he ALJ gave 'controlling weight' to the opinions of non-examining state agency physicians and psychologists."  Pl.'s Br. at 18.  The Commissioner concedes that the designation of controlling weight to the opinions of non-examining state agency physicians and psychologists was error, but argues that the error was harmless.  Def.'s Br. at 9-10.

Controlling weight may only be given to medical opinions in appropriate situations, such as from treating sources.  SSR 96-2p.  Treating sources are defined as one's own physician "or other acceptable medical source" that has provided medical treatment or evaluation over a period of time.  20 C.F.R. § 404.1502.  There are additional factors that must be considered when a treating source's opinion is not given controlling weight.  20 C.F.R. § 404.1527(d).  These include (1) the examining relationship, (2) the treatment relationship, (3) the supportability or amount of relevant evidence presented by the medical source to support an opinion, (4) the consistency of an opinion with the record, (5) the specialization of the medical source giving the opinion, and (6) other, additional factors.  *Id.* § 404.1527(d)(1)-(6); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).  Also, an ALJ must explain the weight given to the opinions of a "[s]tate agency medical or psychological consultant or other program physician" if the treating source's opinion is not given controlling weight.  *Id.* § 404.1527(f)(2)(ii); *see Gudgel v. Barnhart*, 345 F.3d 467, 470

(7th Cir. 2003) (explaining that an ALJ must give reasons why an examining physician's opinion is rejected).   State agency opinions are treated the same as nonexamining physician opinions and weight given to them must be "supported by evidence in the case record."  SSR 96-6p.  State agency medical opinions "may be entitled to greater weight than the opinions of treating or examining sources" in certain situations, such as when the state agency opinion is based on a review of the record that is more complete than what was available to the treating source.  *Id.*

Here, the ALJ erred in giving state agency physicians' opinions controlling weight. 20 C.F.R. 1527(d); SSR 96-2p.  In addition, there is no analysis that indicates why that controlling weight was warranted.  The ALJ did not mention any determination by a single state agency physician that dealt with Chandler's knee pain.  Instead, the state agency physicians' opinions were offered in reference to Chandler's alleged hand pain and mental disorders. R. at 27.  This oversight is compounded by the medical evidence in the record. X-rays showed significant osteoarthritis degenerative knee changes during 2004. R. at 206, 209.  Furthermore, there is no indication from the record or analysis by the ALJ that any of the state agency physicians were orthopaedic specialists that might entitle them to greater deference.  Although the ALJ followed the factors in 20 C.F.R. § 404.1527 to address the relationship between Dr. Wright and Chandler, he failed to address any of those factors to explain why the weight given to the state agency physicians trumped Chandler's treating physician.  The Seventh Circuit has repeatedly held that the Secretary's decision must include the reasons for his conclusions and "articulate some minimal level of analysis of the evidence."  *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994) (quoting *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988)).  Proper analysis of the state agency

source opinions would have, at the very least, touched on more concrete differences between the opinions of Dr. Wright and the state agency sources.

The ALJ also erred in his RFC determination by not addressing Chandler's handling and balancing limitations.  As the Commissioner points out, while "opinions from medical sources on issues such as whether [an] impairment meets or equals the requirement" are to be considered, the RFC determination is an "issue reserved to the Commissioner." Def.'s Br. at 10; 20 C.F.R. § 404.1527(e)(2).  Nonetheless, the ALJ stated the state agency opinions were entitled to controlling weight, but did not expressly dismiss or explain why the non-examiner's opinions were not included in his RFC.  The ALJ did address Chandler's alleged hand pain and cited Dr. Felciano's opinion regarding her fine finger manipulation.[4]  The ALJ stated that there was not any objective medical evidence to support Chandler's hand pain.  However, Dr. Bastnagel, a state agency physician, indicated that Chandler's handling was limited due to her carpal tunnel surgeries that Chandler has had in both hands.  R. at 140, 214, 251, 257.  Chandler's treating physician had attributed those surgeries to swelling in Chandler's hands.  R. at 257.  The ALJ not only failed to mention both doctors observations but did not include any mention of handling or balancing restrictions in his RFC.  On remand, the ALJ should determine whether Chandler's handling and balancing limitations prevent her from returning to her past relevant work.

---

[4] The ALJ incorrectly referred to Dr. Bastnagel's opinion as a "physical examination" on February 8, 2005.  However, the record indicates that Dr. Bastnagel filled out a Physical Residual Functional Capacity Assessment that was based on the evidence in the file.  R. at 137.  Furthermore, it was Dr. Feliciano, and not Dr. Bastnagel, who stated Chandler had normal bilateral fine finger manipulation.  R. at 150.

Lastly, Chandler argues that the ALJ erred in making his credibility determination. An ALJ is afforded "special deference" in making credibility determinations. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Furthermore, "an ALJ's credibility determination" will be reversed "only if the claimant can show it was 'patently wrong.'" *Id.* (quoting *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Here, the ALJ pointed to Chandler's responses to questions during the hearing. R. at 27. When asked about her current levels of pain, Chandler claimed her knee pain was ten on a scale of ten, her hand pain a ten, and her shoulder pain an eight. R. at 27. The ALJ had told Chandler a "ten" was the equivalent to "being so severe that a person would be screaming in pain and would have to be taken to the hospital emergency room." R. at 27. However, Chandler stated this while "calm and relaxed and in no apparent distress." R. at 27. Accordingly, substantial evidence supports the ALJ's determination that Chandler was not credible.

## 5. <u>Issue of Obesity</u>

Finally, Chandler argues that the ALJ erred in failing to evaluate Chandler's obesity. An ALJ is required to make an assessment of any functional limitations caused by obesity when determining a claimant's RFC. SSR 02-1p. The existence of obesity, without more, does not "increase the severity or functional limitations of the other impairment." *Id.* The Commissioner is correct to point out that the Agency evaluates each individual case based on the information in the record. Def.'s Br. at 11.

There is no evidence in the record to suggest that Chandler's obesity is an aggravating factor contributing to her arthritis pain. Furthermore, as the Commissioner points out, Chandler did not indicate to the state agency or ALJ that her disability was

caused by her obesity.  R. at 65, 73-79, 92-93, 119-20, 388-97.  Chandler points to SSR 02-1p, and states that someone with obesity and arthritis might have more pain and limitation than someone with arthritis alone.  However, there is no medical evidence that Chandler has more pain and limitation because of her obesity.  Therefore, the ALJ did not err because there is no medical evidence in the record that Chandler's obesity increased her impairments.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the final decision of the Commissioner of the Social Security Administration in this case is **REVERSED and REMANDED** for further proceedings consistent with this opinion.

IT IS SO ORDERED this 7th day of August, 2009.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

J. Frank Hanley II
laurasiener@aol.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov